KATE LOONEY, Administratrix, etc., Respondent,
   v. BARTLETT & KLING et al., Defendants;
STATE BANK OF WEST POINT, Appellant.

Kansas City Court of Appeals, May 30, 1904.

1. **FRAUDULENT CONVEYANCES: Evidence: Liens: Notice.**
The evidence is reviewed and it is held that the defendant contractors were guilty of fraud in transferring as collateral security to appellant bank a certificate of deposit issued by the Farmers Bank in creating a trust fund for security of contractor's creditors and that the appellant bank had notice of the object of creating said trust fund and the question as to whether liens could be enforced on public buildings in Missouri is not involved in the matter.

2. ———: **Inter Partes: Costs.** A fraudulent assignment of a certificate of deposit is valid between the parties and the fact of taking the costs of litigation growing out of a fraudulent transfer and thereby reducing the amount coming to the transferee flows from the conduct of the transferee in connecting himself with the fraudulent transaction.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves,*
Judge.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

*Smith & Denton* for appellant.

(1) The certificate of deposit of $4,200 having been issued by the Farmers Bank, at the instance and request, and under the supervision of the county court, and having been thereafter negotiated and assigned to the appellant for value and without notice, respondents, the bank and Bates county, and those claiming under them, are estopped to say there were, in fact, conditions attached to said deposit other than as expressed in the written instrument. Chouteau v. Goddin, 39 Mo. 229;

Austin v. Loring, 63 Mo. 19; Lanier v. McIntos, 117 Mo. 519. (2) The Farmers Bank and Bates county, acting through the county court, having made the deposit in suit payable to Bartlett & Kling, when the county should be free from all liability on account of liens or claims for material or work done in the erection of the courthouse, an impossible condition, which both are conclusively bound to know, the fund at once became an unconditional deposit in favor of Bartlett & Kling. 4 Kent Comm. 130; 2 Blackstone 156; Morse v. Hayden, 82 Me. 230, 19 Atl. 443; Parker v. Parker, 123 Mass. 586; Burnham v. Burnham, 79 Wis. 557, 48 N. W. 661; Ellicott v. Ellicott, 45 Atl. (Md.) 183. (3) The courthouse was not subject to mechanics' liens. Abercrombie v. Ely, 60 Mo. 23; Clinton ex rel. v. Henry Co., 115 Mo. 567. (4) The deposit of $4,200 in Farmers Bank having been made payable to Bartlett & Kling when the county should be exempt from liability on account of liens, etc., and it being at the time free from all such supposed liens or liability, the money was payable on demand. Demand having been made and payment refused, the bank was liable for interest from the date of demand, at the legal rate. Padley v. Catterlin, 64 Mo. App. 629; Dempsey v. Schawacker, 140 Mo. 680. (5) Appellant, although it took the assignment of the certificate of deposit as collateral security, only, for the payment of the loan of $4,200, the loan being made at the time upon this assignment, was an innocent purchaser, if without notice of any fraudulent intent upon the part of Bartlett & Kling. Logan v. Smith, 62 Mo. 455; Deere v. Marsdon, 88 Mo. 512; Wine Co. v. Rinehart, 42 Mo. App. 171; Bank v. Abernathy, 32 Mo. App. 211; Lee v. Wilkins, 79 Mo. App. 163. (6) The burden of proving fraud by appellant was upon the respondents, who charged the fraud. Fraud is never presumed. Garesche v. McDonald, 103 Mo. 10; Hill v. Taylor, 125 Mo. 331.

*James C. Williams* and *John Francisco* for respondent.

(1) The finding of facts by the court stand as a special verdict, and if there was evidence tending to establish the facts found they will not be disturbed. Freeman v. Moffit, 119 Mo. 294; Lingenfelder v. Wainwright, 103 Mo. 578; Ferry Company v. Railroad, 73 Mo. 389; Vogt v. Butler, 105 Mo. 479; Blount v. Spratt, 113 Mo. 48; Freeman v. Moffit, 135 Mo. 270.; Sweet v. Maupin, 47 Mo. 323; Barker v. Scudder, 56 Mo. 272. (2) Fraud vitiates everything it touches. Stumpf v. Stumpf, 7 Mo. App. 272; Kenrick v. Cole, 61 Mo. 573; Clarkson v. Creely, 40 Mo. 114; Massey v. Young, 73 Mo. 273; Cooley on Torts, 475; Hopkins v. Sievert, 58 Mo. 201; Burgert v. Borchert, 59 Mo. 80; Schmucker's Estate v. Reed, 61 Mo. 592; Barr v. Baker, 9 Mo. 850; Brownlee v. Hewitt, 1 Mo. App. 360; Kehoe v. Taylor, 31 Mo. App. 588; Seed Co. v. Plant & Seed Co., 23 Mo. App. 579. (3) Where fraud is an issue, courts will permit the evidence to take a wide range with the view of uncovering all the facts. Guarantee Co. v. Baker, 54 Mo. App. 79; Stewart v. Severance, 43 Mo. 322; Baldwin v. Whitcomb, 71 Mo. 651; Snell v. Harrison, 104 Mo. 158; Ridge v. Greenwell, 53 Mo. App. 479; Burgert v. Borchert, 59 Mo. 80; State ex rel. v. Estil, 6 Mo. App. 6; Groschke v. Bordenheimer, 15 Mo. App. 353; Muenks v. Bunch, 90 Mo. 500; Frederick v. Allgaier, 88 Mo. 598; Gordon v. Ismay, 55 Mo. App. 323; Martin v. Estes, 132 Mo. 402; Hopkins v. Sievert, 58 Mo. 201; Spengler v. Kaufman, 46 Mo. App. 644. (4) A simple certificate of deposit containing no words or promise to pay the amount is nothing more than a receipt, and may be explained by parol evidence, as in the case of any other receipt. 2 Daniel on Negotiable Instruments (4 Ed.), secs. 1704, 1705 and 1706; Hotchkiss v. Mosher, 48 N. Y. 482; Easton v. Hyde, 13 Minn. 90.

ELLISON, J.—Bartlett & Kling as general contractors completed a courthouse for Bates county, Missouri, on July 26, 1902, and on that day there was found to be a balance due them of something more than eight thousand dollars. But they had given to the county a bond with surety, that they would faithfully comply with their contract for building and this bond included provisions that all labor and material going into the building should be paid. So that when the building was finished, the county court objected to paying to Bartlett (who in all matters concerned acted for the firm) until it could be known that all material and labor which had been put into the building were paid. It was thereupon arranged between them that $4,200 of the money would be deposited by the county court to the credit of the "trust fund" for the benefit of whoever (if any one) had claims for labor and material in the building. A certificate of deposit was issued in duplicate, one delivered to the county court and the other to Bartlett, reading as follows:

"Deposited in Farmers Bank of Bates county, Butler, Missouri, July 26, 1902, to the credit of trust fund by county court of Bates county to be paid to Bartlett & Kling when the county is fully relieved from every and all liability on account of all material and labor used in the construction of courthouse, $4,200, forty-two hundred dollars. E. D. Kipp, cashier."

Bartlett took the certificate to West Point, Illinois, and there on July 28, assigned it to the State Bank of that town as collateral security for its full amount ($4,200) that day borrowed of the bank; and that bank immediately notified the bank of deposit at Butler, of the assignment.

Looney Bros. were subcontractors under Bartlett & Kling for the roofing and metal work for $3,100 and they bought largely of the Townley Metal and Hardware Company of Kansas City, assigning their contract

with Bartlett & Kling as security and the latter paid the Townley company only a small part of their claim, leaving a balance due them of $1,283.74. Lowney also owed smaller sums to Smith & Sons and to Harper. The Townley company brought suit by attachment against Bartlett & Kling and garnished the Farmers Bank at Butler, which answered, stating its issue of the certificate of deposit. Bartlett & Kling were notified by publication but did not appear. The West Point Bank filed an interplea claiming the money due on the certificate.

One of the Looney Bros. sued Bartlett & Kling, the Townley Company, the West Point Bank and the Farmers Bank at Butler in equity. These defendants, except Bartlett & Kling, filed answers (some being designated as intervening petitions and interpleas) each setting up the sums to which each claimed they were entitled.

Afterwards, the West Point Bank filed its suit in equity making the parties just named (except Bartlett & Kling) parties to the action. By this suit the West Point Bank sought to establish its claim to the money represented by the certificate of deposit. So that in all the various petitions, answers, interpleas, intervening petitions, and what not, these various parties never allowed the court, or opposing party, to lose sight of the respective claims made to the whole, or a part of the fund in bank represented by the certificate of deposit.

In this condition of confusion the trial court ordered all cases consolidated and, after hearing the evidence, found that the transfer or assignment of the certificate of deposit to the West Point Bank was made to defraud the creditors of Bartlett & Kling, and directed judgment that the Farmers Bank at Butler pay Townley & Co. their claim of $1,283.74; and to pay Looney the balance of his claim, after paying out of it the small claims of Smith and Harper, which Looney owed them, leaving a net balance to Looney of $192.78. The court further directed that the remainder of the

amount represented by the certificate of deposit, after paying the costs of the litigation herein mentioned, belonged to Bartlett & Kling. The West Point Bank appealed.

The court's finding that the transfer of the certificate of deposit by Bartlett & Kling to the West Point Bank was made to defraud the creditors of Bartlett & Kling is attacked as not being sustained by the evidence. We, however, believe it is. Bartlett lived at Galesburg, Illinois, a city of 25,000 people, where his firm was located in business. West Point is a small village of 200 people in the same State about sixty miles from Galesburg. The firm did not do any business with the bank at West Point. Bartlett, however, knew Miller, the cashier of that bank, intimately. He got the certificate of deposit at Butler, Missouri, on the twenty-sixth of July and after being unsuccessful in borrowing money from banks in Galesburg with it as security, he was in West Point by the twenty-eighth with a written statement of what he deemed the law of Missouri to be on the question of mechanic's liens against public buildings, such as courthouses. By that statement he assured Miller that no liens for labor or material could affect the courthouse at Butler, or the certificate itself. Bartlett stated that he went to West Point for the reason that Miller was a "brainy man and he thought he could see the point."

Miller testified that he had never demanded the money of Bartlett because he considered the loan was drawing a good rate of interest and he did not want to collect. Yet, it was shown by him that he made immediate effort to collect it by undertaking to have the bank at Butler pay the certificate. He was asked if he did not have misgivings that some one would claim the money, and answered: "The fact that the statement given me was to the effect that the county officials desired the money to lay in the bank for a time was sufficient notice to me that we should perfect our assign-

ment.'' These and other circumstnces afford ample
ground for belief that Bartlett, failing to get the money
himself at Butler, was endeavoring to withdraw it from
the reach of creditors, by the plan of putting the cer-
tificate in other hands. If the West Point Bank had
been a creditor seeking to secure itself by obtaining the
certificate, its present position would have been more
tenable. But making itself a volunteer creditor and re-
ceiving the certificate as security for a debt then created,
its position could only be defended on the ground that
Miller, the cashier, did not know of and participate in
the object and intent of Bartlett. Miller's own testi-
mony shows plain enough, when connected with the cir-
cumstances, that he was aiding Bartlett, or at least act-
ing with knowledge of Bartlett's intentions.

Furthermore, we think the certificate itself shows
that there were claims against the fund which it rep-
resented. It read that the deposit was made by the
county court to the credit of a ''trust fund,'' to be paid
to Bartlett & Kling when the county should be ''fully re-
lieved from every and all liability on account of all ma-
terial and labor used in the construction of the court-
house.'' That wording of itself was a warning that
there were outstanding claims which the county court
recognized were obligations on the part of the county.
The fact that, as a legal proposition, there could not be
a lien against the courthouse seems to be considered as
conclusive of the right of Bartlett & Kling or their as-
signees to collect the certificate. But that is not the
natural construction of the reading of the certificate.
It says nothing of liens against the courthouse.
It refers to ''every and all liability'' of the
county. There were provisions in the contract be-
tween Bartlett & Kling and the county court, which
authorized the county to hold back a part of
the money for the construction of the courthouse for the

payment of material and labor. There were also further provisions which, if enforced by the county court, would protect the laborers and materialmen against loss. While a lien could not be had against the courthouse, yet the county court may very well have regarded that if it allowed the contractors to draw all the money without paying their bills for labor and materials it would incur a liability of some sort, legal or moral. It is of no consequence to concede the county court was mistaken as to its liability. It is the *fact* that the parties thought so and agreed that it was so, by their contract, and *recognized that it was so by the certificate itself*. We repeat, that in view of the contract (which the cashier of the West Point bank saw) the terms of the certificate of deposit were themselves a notification that there were outstanding claims against Bartlett & Kling, which the deposit was designed to protect.

So, therefore, we consider the fact that the courthouse was not subject to a lien is of no consequence. It is not claimed that the West Point bank had notice of a lien. The claim is, that it had notice of outstanding debts which the certificate was designed to protect. It is wholly immaterial, as affecting the charge of fraud against Bartlett and the West Point bank, whether a lien could, or could not be enforced for the debts of the former.

What we have said necessarily disposes of the arguments submitted and the many points and objections presented, and it determines that the trial court was right in the view it took of the complicated litigation resulting in the present appeal, except for the inadvertence of incorporating in the judgment a provision that Bartlett & Kling were entitled to the balance due on the certificate, after paying the other parties. Bartlett & Kling were not made parties to the action instituted by the West Point bank. And though there was service by publication in the Townley Company case, they

did not appear personally, and the scope of the Townley case did not authorize an adjudication of the rights between Bartlett & Kling and the West Point bank. Besides as between them, the assignment of the certificate was valid. The judgment should therefore be in favor of the West Point bank against the bank at Butler for the balance of the certificate after deducting the amount of the judgments and interest and the costs of this litigation. While the result of taking the costs out of the funds represented by the certificate is to reduce the balance which will go to the West Point bank, it flows from its conduct in connecting itself with the transaction in the manner it did. Conduct which has caused the trouble which has followed. The judgment will be affirmed except as just stated; it being reversed as to recovery of Bartlett & Kling. The cause will be remanded so that judgments may be entered in the trial court. All concur.